Good morning. Welcome to the Ninth Circuit. Judge Bumate and I would like to extend a special welcome to Judge Bennett from the United States District Court for the District of Maryland, who is sitting with us. We really appreciate your willingness to come out and help us with our work. Thank you, Judge Miller, and it's always an honor to sit with the Ninth Circuit. I've done it on numerous occasions, and it's great to be back. All but one of the cases on today's calendar are submitted on the Ninth Circuit, and I'd like to turn it over to Mr. Grant Winthrop. Mr. Dray? Good morning, and may it please the Court, I'm Dominic Dray, and with Matthew Hoxie, I represent Grant Winthrop. I'll endeavor to save three minutes for rebuttal. This case is about legal hostage taking. Grant Winthrop directed $175,000 in donations to the Arizona Rangers. The gifts had few strings attached, but the one they had required the Rangers to surrender any unused funds and remaining material to the Wine Education Council, WECC, upon the occurrence of a condition that no one disputes occurred. Rather than turn over the gift, the Rangers brought third-party claims against Winthrop. The purpose, as the District Court recognized, was to force Winthrop's father, WECC's general counsel, to betray his client in order to help his son. That plan failed because the Winthrops refused to be bullied, but they also favor peace. WECC ultimately settled and obtained everything it sought, plus $400,000, more than twice the original gifts, in attorney's fees. Additionally, Winthrop tried to settle, offering a walk-away settlement on January 27, 2020. Under Arizona law, that made him the prevailing party from that day forward. The District Court, however, applied a completely different test. It departed from the statutory rule that designates a prevailing party as the one who offers a settlement that the other side rejects and then fails to do better in favor of a common law test that the statute has displaced. So you described the proposed settlement as a walk-away settlement, but it wasn't exactly walking away. One of the terms was that they had to provide a statement with mutually agreed upon wording saying that he had not committed any wrongdoing. And you didn't really get that, did you? Oh, sure we did. We got almost verbatim that. As Your Honor rightly quotes, the requirement was a statement with mutually agreed upon wording saying that Grant Winthrop has not committed any wrongdoing. And here's the quote from the other side. Quote, we're not alleging he did anything wrong. But the order, the order that was ultimately entered in this case said the judgment is hereby entered in favor of defendant Arizona Rangers, correct? Indeed, that's correct. And that was not really consistent with the settlement agreement, apparently. That was not consistent with anything, Your Honor, including the Court's own instruction to the law clerk or to the, excuse me, clerk of court, which, you know, we trace out the judgment point in some detail, but the short of it is that nobody asked for that form of judgment, including our friends on the other side. The Court didn't order it and recognized at 251 of the excerpts that it could correct it at a later date. Winthrop requested that it be corrected because it mattered immensely to him. And then eight months later, without any explanation, it's page 9 in the excerpts, the Court just says, we're not changing the judgment. I think that stems from the failure to understand how the fee statute works. If I kind of peek behind the curtain, I think what the Court was up to was thinking I need to have a prevailing party because I'm going to give fees. So in some ways, if you correct the fee error, it sort of helps to explain what went off the rails with the judgment, with the form of judgment. And am I correct in understanding that the matter of reimbursements that were claimed by your client remained open? Is that right? Yes, Your Honor. He took a voluntary dismissal of the last, I think it was about 500 bucks of reimbursement. Again. But that was not included in the summary judgment that was awarded. Well, it was a voluntary dismissal. So the Court said, enter a judgment on that. And I think what happened is the clerk of court said, judgment in favor of the Rangers, rather than judgment as prescribed in this Court's rulings. And then the Court had traced out, this is at page 262 of the excerpts, the Court had traced out a number of her prior orders that were to be included. So yes, he took the voluntary dismissal on that last remaining claim. The other side sort of oddly tries to leverage that, like that he should have, well, it's his fault. He should have pursued that 500 bucks to a jury trial in the District of Arizona. But that's a complete waste of time. And it's contrary to the purpose of the statute. I mean, this isn't me saying it. Countless Arizona courts have said the purpose of 12-341-01 is to encourage settlement. So Mr. Winthrop offered back in 2020 to everybody dismisses, you say I didn't do anything wrong, and the Court decides fees. And that's ultimately what happened at the end of the day. Well, but again, going back to the statement, I mean, a statement with mutually agreed-upon wording connotes a level of formality that doesn't really seem compatible with an off-the-cuff statement in the middle of a hearing about a discovery dispute on some other issue. So I'm not sure if you would. Respectfully, Judge, I disagree. The settlement offer, which is at 241 of the excerpts, doesn't say a written statement. It doesn't say a statement on your letterhead or anything like that. It just says a statement. This was a statement. It was almost verbatim what the requirement was, that Mr. Winthrop had done nothing wrong. I mean, if you line up the statement in court and the statement in the settlement offer, they are nearly verbatim. I would say that the formality of a statement made in open court on the record is better in many ways than some other form of a statement on, you know, on letterhead or whatever. And remember, the way that this statute works is the side who rejects the settlement offer has to do better. So even if this was merely barely satisfying the conditions in the settlement offer, Winthrop wins. But at the time that this statement was made, or at the time of this hearing, they were still pursuing a breach of fiduciary duty claim, weren't they? I believe that's correct, Your Honor, yes. So how is it compatible with, how is a, if what they really meant was, you know, we don't believe he did anything wrong, how is that consistent with continuing to pursue a claim for breach of fiduciary duty? You can ask my friends on the other side that question, but we got the statement that we needed. The mutually agreed upon language part, by the way, I don't think should give the court any pause because it's certainly agreeable to Winthrop. Presumably that was an agreeable statement to the other side because they said it. And so it's hard for me to see how that could fail to satisfy the conditions of the statute. Now, they say they rejected the settlement offer because it was premature or they were unable to accept it or something like that. That's basically just stating the reason, their reason for saying no. And as we note in the briefs, presumably everyone who refuses a settlement offer has a reason for doing so. Counsel, can I ask, under Arizona law, can we find no party prevailed and just everyone bear their own cost? I don't think under the statute, no. You could find that up to the moment that the settlement offer was extended, because for that, the traditional common law rule applies. It's something that the other side blurs when they say that they're not mutually exclusive. I mean, that's right. Yeah. So the court could say that up until September, whatever, or excuse me, January 27th, 20, nobody had prevailed. Everybody bears their cost. But then under the statute, what if we said that that third provision, you know, the mutually agreed language was not sufficient, and then that doesn't kick in? So then what happens at that point? So then I you're correct. If the statute did not control, then you would revert to the totality of the litigation standard. And we briefed that extensively. I don't particularly want to go down the many-factor rabbit hole, although I think that's well laid out. And it's very clear to me that the Winthrop — excuse me, the Rangers' primary purpose, as the Court itself said on page 4 of the excerpts, was to obtain indemnity. They lost that claim. Well, is it really they lost it, it just was mooted? No. That one was dismissed. This is worth clarifying. Yeah. Because my understanding, it was just mooted because WIC did not pursue that type of claim. They just wanted — they pursued it under the contract claim. I'm glad for the opportunity to clarify, Your Honor. Yes, the indemnity claim was dismissed. It's docket number 176. And it is in the list that the Court included when she said, enter judgment consistent with my prior orders, including — and then there's a series of docket numbers. One of them is docket 176. I will try to find a record number for you, but that may take me a moment. That is — that is important, because that happened before the alleged — the grand mooting at the end of the case. That had already been dismissed. Oh, you're talking about the general indemnity claim. Isn't there multiple — The common indemnity claim. There's one general indemnity claim, which was dismissed pretty early. But then there was another indemnity claim that was only dismissed after the WIC complaint was mooted. I don't think so, Your Honor. There were a variety of contract claims and maybe a breach of fiduciary duty claim that were dismissed at that time. Well, let me clarify. The WIC only got the money from the Rangers because of the contract claim, right, that's saying that there's a reversion if something happens, right? It wasn't because of a misuse of funds. Which, by the way, and I don't want to spend a ton of time on this, but WIC only ever sued over its reversionary interest. And we trace that out in the reply brief, what I call the restatement of the case. They never identify a misallocation of money. The donation instruments themselves don't provide any basis for that. The only thing they moved — the only thing that the Rangers moved for summary interest. WIC only responded on that ground. There's just no — there's no there there on this. This is a fig leaf to avoid the abuse of process claim, which may actually be a good thing to talk about for a moment because Your Honor asked, could this end with us saying nobody gets their fees? The other way that that could come about, Judge Bimate, would be if we had a decision on the abuse of process claim, which was dismissed, saying that that was an error because then the fee statute, although I would appreciate the Court clarifying its application, and the form of judgment would be — would be mooted, and we would be back to try the — or at least proceed to summary judgment on the abuse of process claim. And that, of course, could change the attorney's fees calculation itself. Well, let me just put it this way. Assuming that the statute doesn't kick in, the settlement offer doesn't kick in, the way I see it is that the — the Rangers basically had their claims against your client mooted, and your client mostly lost his claims. And so therefore, under the abuse of discretion standard, that seems like we should just defer to the district court. So that's how I see it right now. Tell me why I'm wrong on that. Okay. So first of all, I want to push back on the idea that the statute doesn't apply. Yeah.  And, of course, if the statute applies, and American Power Products gives us this, it doesn't matter if he lost on literally everything. Yeah. Now, if you were to do the common law test, the four-factor test that, you know, the district court went ahead with, we point out that there's a number of errors in that, including it's — the district court's opinion reads as if we were the plaintiff, that, you know, Winthrop stated — and it blows my mind that the other side never addresses Rule 13 and the fact that these are mandatory counterclaims that we have to make. Their goal was to change the legal relationship between Winthrop and the Rangers, that somehow he would owe them something. He owed them nothing. They did not obtain their primary objective. Then they say in their briefing, our primary objective was to defeat his counterclaims. That's ludicrous. No plaintiff's primary objective is to defeat the counterclaims from the other side. And yet that's — that's what the brief, in fact, says. On the other factors, you know, I agree that nobody obtained monetary judgment from each other, so that's a push, although our guy did dismiss, as Judge Bennett pointed out, the last monetary claim that was alive voluntarily. The settlement factor, the district court said favors nobody, that's truly inexplicable. We're the only ones who offered a settlement. By definition, we have to win that factor. And then, you know, on the other claims that are related, again, our client successfully defeated all of the third-party plaintiff's claims against him, which is what a defendant seeks to do. That's his primary objective. So at the end of the day, those are errors. There are a variety of them that we trace out in the briefs that are chiefly legal. I would like to save a couple of minutes for rebuttal, if I may. Okay. Thank you. Mr. Ackerman. Good morning, Your Honors. My name is Justin Ackerman on behalf of the Arizona Rangers. Your Honors, this case is up on an abusive discretion standard with regard to the attorney's fees award. Litigation of this case was very clear that the claims that were brought by WECC, the Hawaiian Education Council, against the Arizona Rangers involved the misappropriation and misspending of grant funds. The complaint it issued didn't delineate or didn't establish a timeframe in which that occurred. It was broadly accused. In other words, it didn't say after Grant Winthrop left the Arizona Rangers, there was this misappropriation. It didn't say before, after, or whatever. It just said there was a misappropriation of funds and that the Rangers used them for an improper purpose. And so, by that account, the Arizona Rangers entirely properly named Grant Winthrop and its third-party complaint to the extent it were ever found to be liable for any misappropriation of funds. And the moment in this litigation that that became clear that wasn't the case, the Arizona Rangers took the position that now its third-party complaint was mooted. That's not the position Grant Winthrop took. He took the position that summary judgment was still appropriate in his favor on the Arizona Rangers' third-party complaint. The trial court outright rejected that argument. It sided with the Arizona Rangers. And so, the idea that there was some sort of victory by Grant Winthrop over the Arizona Rangers on its third-party complaint is a fallacy within the record. It's plain within the record. With regard to— Mr. Ackerman, am I correct in understanding that the whole dispute here, the underlying dispute, is all over $175,000? Is that right? That's correct, Your Honor. And the whole dispute was $175,000. And as I understand it, your clients agreed to pay the Wine Education Council $400,000. Is that correct? That's correct, Your Honor. And return $36,000 in grant funds. That's correct, Your Honor. And return equipment acquired with grant funds. Yes, sir, Your Honor. But your client was the prevailing party? Yes, as to the claims between the Arizona Rangers and Grant Winthrop, because WECC is not a party to this appeal. I understand. And he has nothing to do with those issues. Obviously, what remained, which was just a pittance in comparison to all this, is the approximately $500 in reimbursements that Winthrop also sought. Yes, and Winthrop also sought almost a million dollars in attorney's fees based on that $500 pittance. And so, Wine Education Council, though it's an important background factor in this case, has nothing to do with the issue of attorney's fees as to who prevailed between Arizona Rangers and Grant Winthrop. Why did Rangers pay WECC over $400,000 then? It's a settlement, Your Honor. On what? On what basis? It was the remaining claims for the return of grant funds. But the grant funds were only, you know, a quarter of that. I don't understand that. Well, of course, the risk that comes with whoever is the prevailing party on a breach contract claim is attorney's fees. And they were significant in this case, as we saw when the fees were later briefed. So that was part of a settlement of the misappropriation claim? No, Your Honor. It was a part of the settlement of the failure to return certain grant funds and property. So the misappropriation claim was the Arizona Rangers obtained summary judgment over Wine Education Council's misappropriation claim. The district court entered summary judgment in its favor on that ground. So I just don't understand. How did you get to $400,000 then from the $175,000 that was due? Your Honor, that's to the parties' negotiations. I don't think it's even appropriate to consider the $400,000 amount in this appeal. Well, it's relevant to me because, you know, WECC — Rangers sought indemnification against Winthrop, and then they — Rangers ended up paying almost, you know, half a million dollars to WECC and then get no indemnification from Winthrop, which suggests that, you know, Winthrop kind of prevailed. Well, I struggle to see that because the claim that was settled was the failure to return property claim that arose after Grant Winthrop left the Arizona Rangers. So that whole issue never involved him, and Arizona Rangers were always clear in its third-party complaint that those claims that it brought against Grant Winthrop only ever related to the claims that he helped them solicit, obtain, and spend. And so whatever happened after he left the Rangers, which was — that was the claim that was settled with WECC, had nothing to do with him. And so how could he possibly prevail on a claim that had nothing to do with him? You know, with regard to the four-part offer — Yeah, I was just about to ask you, why isn't the judgment that ultimately resulted equal to or more favorable than the offer that he made to you? Yeah, there's two points I'd like to stress to the Court. One, 12341.01, ARS Section 12341.01, still provides a court, regardless of the first sentence, which is the prevailing party sentence, and the second sentence, the offer sentence that they're relying on, the court still retains ultimate discretion to decide fees. May award is the key language in that statute. Right, but it doesn't have discretion to decide who the prevailing party is. Would you agree that the second sentence says that if those conditions are satisfied, then that is the prevailing — the successful party, right? Yes, but I suppose I'm just getting to the end here, because even if it decides someone is a prevailing party, it still may say, but you get nothing. Right, but it can't — I mean, here they've been ordered to pay you, right? And that's not allowed if he is the successful party, is it? Well, it depends, Your Honor, because, first of all, the Hall case is very clear. It's our Court of Appeals case, which the American Powers case heavily relies on. Very clearly says we are the prevailing party up until that offer is made. So just not to split hairs, but just to be clear with the record, we do have a prevailing party status up until that offer, and so then we get to the issue of, well, is the offer valid? And it's not. It's a four-part offer. To follow up, if I can, Mr. Ackerman, on Judge Miller's question, not only do you have the statutory section 12-341.01, but also the Arizona Rules of Civil Appellate Procedure 21, as referenced in the Bank I case, which I think has been briefed by the parties, the 1994 opinion of the Arizona Supreme Court. And essentially there, the court — it was noted that the court can exercise its discretion as to whether or not to award attorney's fees in the event that there is no clear successful party. Is that not correct? Let me address that in a couple parts, Your Honor. RCAP 21 is not an independent source of attorney's fees. Right. It has to rely on an underlying source for attorney's fees, which is 12-341.01. Yes. So you can't escape that. Yes. But that statute does provide that in terms of a refusal to award attorney's fees to either party if it's determined that there's no clear successful party. And I think — Is that not correct? I think the court — as I just mentioned a minute ago, I think the court always retains ultimate discretion to say someone's entitled to fees, no fees, or no one gets any fees. Right. I have no disagreement there whatsoever. But I think in this case, we clearly are the prevailing party as to the third-party complaint and the counterclaims between Arizona Rangers and Grant Winthrop. But I'd like to address the four-part piece first, and then I'll get to that in a minute. With regard to whether the Rangers' third-party claims against Grant Winthrop were dismissed with prejudice, that was the first requirement. Our claims were never dismissed against him with prejudice. They were determined to be moot. In other words, if another issue ever arose again about grant expenditure funds relating to this time period, we would be able to name Grant Winthrop as a third-party defendant. That claim is not mooted. It's still alive. I'm sorry, not mooted. It was never dismissed with prejudice. Yeah, but if it's mooted, how can someone bring another claim? Mooted as to this case, Your Honor. If another issue ever arose, we could resurrect that issue, as opposed to a claim being dismissed with prejudice. Yeah, but that's a different claim, though. You couldn't bring this claim again. I think if another case arose with similar facts, where they allege that grant funds weren't— Then that's a different claim. Quite honestly, Your Honor, this is outside the record, but there are allegations that there are future litigation coming in this case. But those are different claims, though. They would be, but they would be relating to the same acts, the same conduct. Issued claim preclusion is what I'm thinking of, Your Honor, here, because when a claim is dismissed with prejudice, you are entitled to make an issue or claim preclusion argument based on that once the final judgment is entered. And so you're talking about changing in the relationship of parties here. Grant Winthrop's claims were dismissed with prejudice, all of them, either by motion practice, the vast majority by motion practice, or with the one that he voluntarily dismissed. And it wasn't dismissal without prejudice. It was with prejudice. And so there's no way that they meet that first term of the offer that our claims were dismissed with prejudice. And for them to argue that, well, the end result of this case is now my claims are all dismissed with prejudice, and so that meets the voluntary factor that I was going to do beforehand, I think is ridiculous, Your Honor. And it's for this reason. If someone has to, if someone voluntarily offers to dismiss a claim versus making somebody brief and argue and litigate a case for three years to obtain a summary judgment result, those things are far and away different from each other, especially when you consider the expenses of litigation. And so that piece is not met. And the Court had already hit on the third factor. The comment during a discovery dispute hearing, an off-the-cuff comment, where someone was just explaining the conditional nature of our complaint, is in no way mutually agreed upon language that says Grant Winthrop committed no wrongdoing. Well, I mean, you've got a couple different points there. But on the mutually agreeable point, I mean, you said it. He says he agrees with it. Why isn't that enough for an agreement? One, it's not saying he didn't do anything wrong. It was just explaining the nature of our claim. Well, but you were, I mean, I thought you said we're not alleging that he said anything wrong. Our claims against Mr. Winthrop is we are not alleging he did anything wrong. That's pretty close to we're not saying he committed any wrongdoing. I think if the Court were to take that broad of a view in interpreting a contractual provision where the language is mutually agreed upon, and that carries some weight here, I think, Your Honor, because mutually agreed upon is two parties sitting down, exchanging e-mails or communicating a certain specific language and then saying, yes, we both agree to that language, as opposed to someone explaining something in a discovery dispute hearing that had nothing to do with that and then counsel now at the end of the case saying, aha, I got you. That term's satisfied. I think that's far and away what that was contemplated and the intent of the parties whatsoever, and I think that would be improper for the Court to consider that being met here in this case. Mr. Ackerman, you've mentioned the four-factor test. It dates back to an opinion of the United States District Court for the District of Arizona in, I think, 2009, correct? That was a Federal court decision. Yes, Your Honor. Interpreting Arizona law. Yes, Your Honor. But the four-factor test has never been enunciated by the Arizona State courts. That was an interpretation by the Federal court back in 2009, correct? There are no Arizona appellate authority for the four-factor test. The four-factor test that you've referenced in your materials is LIS, and that is an interpretation made by the District Court in 2009. Isn't that not correct? I believe that that is the citation in support of that factor test was an Arizona District Court case, but, Your Honor, I believe that is still based on valid Arizona law. I don't have it correctly in front of me. LIS referred to at least two appellate decisions by the Arizona State court in terms of its interpretation, but it would certainly appear under 12341.01 that, in terms of the analysis, the court can compare the settlement offer to the judgment finally obtained under the statute, can it not? Yes, it can. And as I just discussed, that was the case. The settlement offer that you're arguing is the settlement offer specifically between Mr. Winthrop, a philanthropist and a major player in this overall event, and your client, correct? That's correct. Okay. That's correct. And with regard to that four-factor test, you know, they're right. Nobody obtained a monetary judgment, but they referenced the remainder of their $499 claim, but, again, they dismissed that with prejudice. I don't know how they can rely on a dismissed claim now to say anything. But, again, just I don't want to belabor the point, but, again, you're referring to the four-factor test as something that being biblical perhaps, but I'm reading in preparation here that opinion relied upon two Arizona appellate decisions, Schwartz and Naratos, and neither of those cases articulated the totality of litigation test. Neither of them, the four-factor test is absolutely not established by Arizona state law. It's been by interpretation by the district court. And for clarity, Your Honor, no one is challenging whether that test applies or not. They haven't raised any issue on appeal saying that test is not a good test. They're just saying apply the settlement offer test of 12341, and if not, as they just conceded a minute ago, then, yes, we apply the four-factor test. So I don't know if it's really at issue or not. Either way, we're really looking at the first sentence of 12341 as to whoever is the successful party. And I think success is the answer. with respect to comparing the terms of the settlement offer to the judgment finally obtained, which is referenced in the second sentence. Is that not correct? Yes, but that's out if those four factors weren't met, as I just discussed a minute ago. So once the court disposes of that, all that's left in front of the court is who is the successful party under the first sentence of 12341. And why isn't one view of that question? He was not involved in this case until you brought him into it by asserting claims against him. He then brought some counterclaims against you in response. None of you ended up getting anything. I would disagree with that, Your Honor. Well, so, I mean, either nobody is the successful party or, you know, maybe he is because he was the one sort of involuntarily brought into all this. So, I mean, what's wrong with that view? A couple things. You know, if we're looking at changed relationships, right, a change in the legal relationship, he brought counterclaims that, again, are dismissed with prejudice via dispositive motion practice, and those counterclaims did speak significant monetary value for reputational harm and for lost wages. And so, again, those claims are dismissed with prejudice because we won at summary judgment on them. They're not even raised on appeal here because the win, I think, was so clear on those issues. And so there is a change in circumstances here where the rangers have prevailed on those counterclaims. And our third-party complaint that we won at summary judgment over WECON was mooted. And so I struggle to see a situation where a party that obtains summary judgment on the main sort of liability claim and then their secondary indemnity claim is mooted as a result, has somehow lost or has somehow not prevailed because that's the ultimate goal of any indemnity claim is to first prevail on your direct liability and then never have to get to indemnity. But that, I mean, I guess it's complicated by the fact that there's three different parties involved in this. But as it relates to Winthrop, I mean, I guess you didn't lose to him on those claims, but you didn't really win anything from him either. He didn't succeed either because, again, he sought to dismiss that third-party claim with prejudice, and the court rejected that argument. And he doesn't challenge that particular piece either on appeal. And again, so all you have is us prevailing over him at summary judgment on our third-party claim and the court accepting our position that that claim is now moot over his objection, and then you have us prevailing at every step on every one of his counterclaims, and he dismisses the one piece that remains with prejudice. So he didn't win on a single thing. Can I ask one more question? Sorry. I don't understand Arizona's interest in — Ranger's interest in keeping the judgment the same. I mean, it's clearly inaccurate. Why is your — what's the interest in making it — not allowing the district court to fix that? I disagree with the court's characterization that it's clearly inaccurate because, as I just mentioned, we prevailed on everything as it relates to — You didn't prevail on the indemnification claim. A common-law indemnification claim we did not prevail on. And you didn't prevail on your other indemnification claim either. Well, no. It was mooted out. Exactly. So you didn't prevail. We did prevail because if our claims against WECC were not mooted or we didn't obtain summary judgment on them, we'd be still litigating whether or not Grant Winthrop had indemnity through either a negligence claim or a breach of fiduciary duty. And so we're using the term indemnity, but it all means the same thing. Right. And so the idea that his common-law indemnity claim was granted summary judgment on and that somehow impacted the case, they were three claims that all sort of characterized the same exact issue. I mean, the fair — he makes a fair point that the takeaway is if you prevailed is that he did something wrong. And that's clearly not right. Well, as they define prevailing, it's the change in legal relationships. And as I mentioned — No, no. In the judgment, you were — you allege indemnification claims that said that Winthrop engaged in some sort of misconduct. And the judgment now says that you prevailed on that, but that's just incorrect. Well, the judgment doesn't articulate that. It just says judgment's entered in favor of — Right. So I just don't understand why you can't — why — what's your interest in not making sure the judgment is more precise and accurate? Your Honor, part of it stems perhaps from a distrust between the parties, because — Yeah, I know. Any change — That's — yeah. I think that's pretty clear from the record. But I think any — any change — But as a legal matter, it's totally inaccurate. And I just don't understand why you just don't fix — agree to fix it. I — again, I take the position that we've — we have prevailed on all the claims as between us and him. And so in favor of Arizona Rangers, to me, is accurate. Okay. I think you're — you're over your time. We've taken you over your time. I think I'm well over my time. Thank you, Your Honor. If there are no further questions, we'll hear rebuttal. Three things, at least, that I'd like to take up while we talk. The first is, on the subject of dismissal with and without prejudice, which you hear a lot about, as a matter of state law, that does not count for 1234101A. Britt v. Steffen, we cited in our — in our papers several times. The reason, by the way, that it doesn't count, if something is dismissed with or without prejudice, is because cases like this come along where things get mooted out. We didn't have a chance to prevail on all of their other half-baked theories because the WECC litigation was mooted out, which leads to a sort of broader point. The other side conflates Winthrop and WECC constantly in this — in this discussion. Winthrop didn't control WECC. He had nothing to do with what they alleged. He got dragged into this by the Rangers, which brings us to the point about abuse of process at which the district court — and that's a few years ago — the district court basically says — it's page 12 of the excerpts — basically says, and I can quote it to avoid the basically part, that — that they were using Winthrop as leverage to try and get to his father, who was, you know, the G.C. at WECC, that — that the objective they had was, quote, get WECC to drop their lawsuit or they would bring him into the current suit. That's at page — paragraph 43 of the complaint. That's the use for which their process, the complaint itself and countless discovery actions was — was deployed, was to use him as a hostage in this litigation. The district court says in one sentence on page 12, misapplying this court's blue goose statement — precedent, rather — says, we can't base it on case-initiating pleadings. That's just not true. And I commend to the court's attention — and in addition to the Britt case I just mentioned about the with-without prejudice business — the Crackle v. Allstate Insurance case and Neenstead, both of which are Arizona cases explaining how do — how abusive process works. And Crackle expressly rejects the argument that there is, quote, any limitation on the kind of process that can count for abuse. Because what's going on here is these guys wanted to hang on to the money. They didn't want to comply with the condition. When they got called out on it by WECC, they launched the salvo against his son to try and bring him in as if he had anything to do with it. But by all counts, he had no ability to control the Rangers after he left, which is when they breached the East Valley condition. So there, again — you know, and again, I — this issue probably obviates the need for decision on the other two. But it was wrong to dismiss the abusive process claims, which — these things tend to cycle back into each other because of the three parties at issue. But I commend — You're over your time, so if you want to very briefly wrap up — I commend that to the court's attention. And the last point concerns the statement that we were talking about earlier, Judge Miller. Not only was it the in-court statement, but that confirmed the 2018 audit that we point to in the briefs where the Rangers recognized that Winthrop did nothing wrong. Thank you, counsel. Thank both counsel for their helpful arguments. And the case is submitted, and we are adjourned. All rise.
judges: MILLER, BUMATAY, Bennett